IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–01891–EWN–MEH


KIRK WARREN and
KURT WARREN,

      Plaintiffs,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
a Massachusetts insurance company,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is an insurance case.  Plaintiffs Kirk and Kurt Warren allege that by failing to disclose, offer, and provide certain personal injury protection ("PIP") coverage to Deborah Bannister and Kurt Warren (the "Insureds"), Defendant Liberty Mutual Fire Insurance Company: (1) violated the Colorado Auto Accident Reparations Act ("CAARA"), specifically Colorado Revised Statutes sections 10–4–710(2)(a), 10–4–706(4)(a), and 10–4–111; (2) breached their insurance contract; (3) breached their insurance contracts in statutory and common law bad faith; and (4) breached the implied covenant of good faith and fair dealing.  This matter comes before the court on: (1) Defendant's Motion for Summary Judgment and Memorandum Brief in Support Thereof, filed July 14, 2006; (2) Defendant's Motion for Summary Judgment Regarding All Claims of Plaintiff Kurt Warren Based on His Prior Bankruptcy Filing, filed July 14, 2006; and (3)

Plaintiff's Motion for Partial Summary Judgment, filed July 17, 2006.  Jurisdiction is based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332 (2006).

## FACTS

### 1.    *Factual Background*

#### a.    *Overview of CAARA*

Before turning to the substance of the motions before the court,  I discuss the portions of CAARA relevant to this case.[1]  Repealed in 2003, CAARA was Colorado's No-Fault Insurance Act.  *See Clark v. State Farm Mut. Auto. Ins. Co.*, 292 F. Supp. 2d 1252, 1258 (D. Colo. 2003) ("*Clark II*") (citing *Nationwide Mut. Ins. Co. v. United States*, 3 F.3d 1392, 1394 [10th Cir. 1993]).  CAARA governed the legal rights of automobile accident victims and their insurers in Colorado and required that motor vehicle owners maintain minimum insurance coverage on their vehicles, including no-fault PIP coverage.  *See* Colo. Rev. Stat. § 10–04–705; *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 552 (Colo. Ct. App. 1998).  The required mandatory minimum PIP coverage provided for reasonable and necessary medical care, rehabilitative care, lost wages, and death benefits in the event of an accident without regard to fault.  *See* Colo. Rev. Stat. §§ 10–04–706(1)(b)–(e).

CAARA also required that insurers provide and offer an option for added PIP (hereinafter "APIP" or "extended PIP") coverage in exchange for higher premiums.  *See id.* § 10–04–710(1);

---

[1] CAARA comprised Colorado Revised Statutes sections 10–4–701 to 10–4–726, *repealed by* Laws 1997, H.B. 97–1209, § 8, effective July 1, 2003.  *See* Colo. Rev. Stat. § 10–4–726 (effective July 1, 2003).  Because CAARA has been repealed, I cite to the 2002 version of Colorado Revised Statutes, except where otherwise noted.

*Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1238 (10th Cir. 2003) ("*Clark I*").

Specifically, as relevant to the instant case, CAARA required that:

> (2)(a) Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10–4–706, at the option of the named insured:
>
> (I) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation; or
>
> (II) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10–04–710(2)(a).  Moreover, the offer of APIP benefits was required to extend coverage to named insureds, family members, guest occupants, and pedestrians.  *See Clark I*, 319 F.3d at 1241–42; *Brennan*, 961 P.2d at 553–55; *see also* Colo. Rev. Stat. § 10–4–707(1). The *Brennan* court noted that the "directive of [section] 10–4–710 is to the insurer, not the insured: all that is required is that the insurer offer these extended benefits."  961 P.2d at 554.

### b.    The Warren Insurance Policy

On or about March 5, 1996, Deborah Bannister (n/k/a Deborah Warren), Kurt Warren's[2] purported wife, executed an auto insurance policy (hereinafter "the Policy") with Defendant on behalf of the Insureds.   (Def.'s Mot. for Summ. J. and Mem. Br. in Supp. Thereof, Statement of Undisputed Material Facts ¶¶ 4, 6 [filed July 14, 2006] [hereinafter "Def.'s Br."]; *admitted at*

---

[2]Hereinafter, I refer to Kurt Warren as "Mr. Warren" and Kirk Warren by his full name.

Pls.' Resp. to Def.'s Mot. for Summ. J., Resp. to Statement of Undisputed Material Facts ¶¶ 4, 6 [filed Aug. 24, 2006] [hereinafter "Pls.' Resp."].)  Mr. Warren had authorized Ms. Bannister to apply for and select the appropriate level of insurance coverage on his behalf.  (*Id.*, Statement of Undisputed Material Facts ¶ 4; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 4.)  At the time she applied for the Policy, Defendant's sales representative, Doug Maxey, traveled to Ms. Bannister's place of work to meet with her; Mr. Warren was not present at the meeting.  (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.)

At this meeting, Ms. Bannister executed an automobile insurance policy application as well as the fourth page of a Colorado PIP Coverage Options Disclosure Form 146 R3 ("1996 PIP Disclosure Form"), selecting Basic PIP coverage and declining any APIP coverage.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 6–7; *deemed admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 6–7.)[3]  The Disclosure Form reads in relevant part:

### ADDED PERSONAL INJURY PROTECTION BENEFITS

You may elect to purchase an [A]PIP option, and [A]PIP Work Loss Option, or a combination of these two options applying to you and any family member for a reasonable increase in premium.  If you elect either of the following, the $50,000 per person limit of benefits is increased to $200,000 per person for any one accident.

i)      [A]PIP MEDICAL EXPENSES - provides the same medical expense coverage as Basic PIP except that losses are **not** limited to those incurred withing five (5) years after the accident.

---

[3]Plaintiffs deny that Ms. Bannister declined to select APIP coverage, but Ms. Bannister testified at her deposition that the signature on the bottom of a page declining such coverage is her own. (Def.'s Br., Ex. A–4 at 7 [Bannister Dep.], Ex. A–6 at 4 [1996 PIP Disclosure Form].)

ii)     [A]PIP WORK LOSS - provides the same Work Loss Coverage as Basic
        PIP except there is no 52 week time limitation and coverage is not subject
        to a weekly dollar limit.

iii)    [A]PIP MEDICAL EXPENSES AND ADDED PIP WORK LOSS -
        provides a combination of i) and ii) above.

(*Id.*, Ex. A–6 at 4 [1996 PIP Disclosure Form] [emphasis in original].)  Ms. Bannister declined

each of the APIP coverages listed above.  (*Id.*)  At the end of their meeting, Mr. Maxey gave Ms.

Bannister a thick folder of documents, which she later reviewed.  (*See* Pls.' Mot. for Summ. J.,

Statement of Undisputed Material Facts ¶ 15 [filed July 17, 2006] [hereinafter "Pls.' Br."];

*admitted at* Def.'s Resp. in Opp. to Pls.' Mot. for Partial Summ. J., Resp. to Statement of

Undisputed Material Facts ¶ 15 [filed Aug. 24, 2006] [hereinafter "Def.'s Resp."].)

        At the time Defendant issued the Policy to Ms. Bannister, the only PIP Endorsement

certified for use by Defendant was PIP Endorsement PP0561 0395 ("1995 PIP Endorsement").

(*Id.*, Statement of Undisputed Material Facts ¶ 6; *admitted at* Def.'s Resp., Resp. to Statement of

Undisputed Material Facts ¶ 6.)  The 1995 PIP Endorsement did not, by its terms, extend APIP

coverage to guest occupants and pedestrians or reference a $200,000 aggregate limit.  (*Id.*,

Statement of Undisputed Material Facts ¶ 6; *admitted at* Def.'s Resp., Resp. to Statement of

Undisputed Material Facts ¶ 6.)  Defendant did not modify its PIP Endorsement to comply with

the *Brennan* decision by extending APIP coverage to guest occupants and pedestrians until

December 21, 2001.  (*Id.*, Statement of Undisputed Material Facts ¶ 12; *admitted at* Def.'s Resp.,

Resp. to Statement of Undisputed Material Facts ¶ 12; *id.*, Ex. 12 [Def.'s Notice of Compliance

with *Brennan*] [noting Defendant deleted references to the "named insured" or any "family

member" in several places within its PIP Endorsement].)

On September 29, 2002, Mr. Warren was driving a 1983 Chevrolet Suburban in which his brother, Kirk Warren, was riding as a passenger, when he lost control and the vehicle rolled over (hereinafter the "Accident").  (Def.'s Br., Statement of Undisputed Material Facts ¶ 1; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 1.)  At the time of the Accident: (1) Kurt Warren and the Suburban he was driving were insured under the Policy; and (2) the Policy, as written, provided state minimum liability limits and basic PIP coverage.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 2–3; *admitted in relevant part at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 2–3.)  Kirk Warren sustained serious injuries and has exhausted basic PIP benefits available under the Policy.  (Pls.' Br., Statement of Undisputed Material Facts ¶ 18; *admitted in relevant part at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 18.)  Mr. Warren also sustained injuries; the parties dispute whether he has or will exhaust basic PIP benefits available under the Policy.  (*Id.*, Statement of Undisputed Material Facts ¶ 14; *disputed at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 14.)

On March 3, 2002, Ms. Bannister and Kurt Warren executed the fourth page of a PIP Coverage Options Disclosure Form ("2003 PIP Disclosure Form").  (Def.'s Br., Statement of Undisputed Material Facts ¶ 31; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 31.)  This form was identical in all relevant respects to the one Ms. Bannister executed when she bought the Policy, except that it did not reference a $200,000 aggregate limit. (*See id.*, Ex. A–14 [2003 PIP Disclosure Form].)  Ms. Bannister again elected Basic PIP coverage and did not elect for any APIP coverage.  (*Id.*)

**2.      *Procedural History***

On September 29, 2005, Plaintiffs filed a complaint in this court asserting claims for: (1) declaratory relief and reformation of the insurance contract in the face of violations of Colorado Revised Statutes sections 10–4–710 and 10–4–706(4)(a); (2) breach of contract for failure to provide APIP coverage and pay APIP benefits; (3) statutory and common law bad faith breach of contract; and (4) breach of implied covenant of good faith and fair dealing.  (Compl. ¶¶ 31–61 [filed Sept. 29, 2005] [hereinafter "Compl."].)  On December 7, 2005, Defendant filed an answer. (Answer and Jury Demand [filed Dec. 7, 2005].)  On July 14, 2006, Defendant filed a motion for summary judgment, arguing: (1) Defendant made a statutorily compliant offer of PIP benefits to the Insureds, thus prohibiting reformation and requiring dismissal of Plaintiffs' other claims for relief; and (2) if the policy is reformed, it should be subject to a $200,000 limit.  (Def.'s Br. at 14–18.)  On August 24, 2006, Plaintiffs filed a response to the motion.  (Pls.' Resp.)  On September 11, 2006, Defendant replied in support of its motion.  (Reply in Supp. of Def.'s Mot. for Summ. J. [filed Sept. 11, 2006] [hereinafter "Def.'s Reply"].)  On July 14, 2006, Defendant filed a motion for summary judgment regarding all of Mr. Warren's claims based on his previous bankruptcy filing, which allegedly established that he is: (1) not a real party in interest; and (2) judicially estopped from taking his present position in this action.  (Def.'s Mot. for Summ. J. Regarding All Claims of Pl. Kurt Warren Based on His Prior Bankr. Filing [filed July 14, 2006] [hereinafter "Def.'s Bankr. Br."].)  On August 24, 2006, Mr. Warren responded to the motion. (Pl.'s Bankr. Resp. to Def.'s Mot for Summ. J. Regarding All Claims of Pl. Kurt Warren Based on His Prior Bankr. Filing [filed Aug. 24, 2006].)  On September 12, 2006, Defendant replied in

support of its motion.  (Reply in Supp. of Def.'s Mot. for Summ. J. Regarding All Claims of Pl. Kurt Warren Based on His Prior Bankr. Filing [filed Sept. 12, 2006].)  On July 17, 2006, Plaintiffs filed a motion for partial summary judgment arguing they are entitled to reformation of the Policy because Defendant violated: (1) section 10–4–710(2)(a) by failing to make a statutorily compliant offer of extended PIP benefits; (2) section 10–4–706(4)(a) by failing to provide a written explanation of PIP benefits; and (3) section 10–4–111 by failing to provide a summary disclosure form.  (Pl.'s Br. at 9–12.)  Plaintiffs further argue that in the case of reformation, a $200,000 aggregate limit should not be imposed.  (*Id.* at 12–13.)  On August 24, 2006, Defendant responded to the motion.  (Def.'s Resp.)  On September 11, 2006, Plaintiffs replied in support of their motion.  (Pls.' Reply to Def.'s Resp. in Opp. to Pls.' Mot. for Partial Summ. J. [filed Sept. 11, 2006] [hereinafter "Pls.' Reply"].)

## ANALYSIS

### 1.    *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific

facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P.

56(e) (2006).  A fact in dispute is "material" if it might affect the outcome of the suit under the

governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury

to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.

1997) (citing *Anderson*, 477 U.S. at 248).  The court may consider only admissible evidence when

ruling on a summary judgment motion.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d

1467, 1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom are viewed

in the light most favorable to the party opposing summary judgment.  *Byers v. City of

Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.**      ***Evaluation of Claims***

Plaintiffs seek summary judgment on their claims for declaratory relief and reformation of

the Policy based on Defendant's failure to: (1) make an offer of extended PIP benefits compliant

with section 10–4–710(2)(a); (2) make an offer reasonably calculated to permit the Insureds to

make an informed decision regarding extended PIP coverage; (3) provide a written explanation of

PIP benefits in violation of section 10–4–706(4)(A); and (4) provide a summary disclosure form

in violation of section 10–4–111.  (Pls.' Br. at 6–12.)  Further, if the court grants reformation,

Plaintiff argues that no aggregate limit should be imposed on the reformed contract.  (*Id.* at

12–13.)  Defendant seeks summary judgment on all of Mr. Warren's claims based on his prior

bankruptcy filing which: (1) rendered the bankruptcy estate's trustee the real party in interest; and (2) judicially estopped Mr. Warren from taking his present position in this action. (Def.'s Bankr. Br.) Additionally, Defendant seeks summary judgment on all of Plaintiffs' claims relating to the Policy, because Defendant made a statutorily compliant offer of extended PIP benefits to Ms. Bannister in a manner reasonably calculated to permit her to make an informed decision regarding the purchase of such benefits. (Def.'s Br. at 14–17.) If this court chooses to reform the Policy, Defendant argues that a $200,000 aggregate limit should apply. (*Id.* at 17–18.) As discussed below, I find Defendant is entitled to summary judgment on both Plaintiffs' claims due to their lack of entitlement to reformation. Consequently, I need not address Defendant's motion for summary judgment on Mr. Warren's claims due to his prior bankruptcy filing.

      **a.**    ***A Compliant Offer***

Plaintiffs allege that Defendant failed to offer the Insureds statutorily compliant extended PIP benefits. (Pls.' Br. at 6–10.) As discussed above, section 10–4–710 provided, at the time of the Accident, that "[e]very insurer shall offer for inclusion in a complying policy" enhanced PIP benefits. Colo. Rev. Stat. § 10–4–710(2)(a). The offer required under Colorado law included: (1) unlimited in time and amount medical expenses coverage; or (2) unlimited in time and amount medical expense coverage together with unlimited in time and amount wage loss coverage. *Id.* An insurer could choose to place an aggregate limit of $200,000 on the total amount payable for complying policies. *Id.* Moreover, these coverages were required to extend to all eligible injured persons listed in section 10–4–707, which includes, named insureds, resident relatives, guest occupants, and pedestrians. *See* Colo. Rev. Stat. § 10–4–707(1)(c); *Clark I*, 319 F.3d at

1241–43; *Brennan*, 961 P.2d at 554.  Plaintiffs allege that Defendant's offer of APIP benefits

excluded coverage to guest occupants and pedestrians.  (Pls.' Br. at 7–9.)  Defendant counters

that its offer was compliant with Colorado law at the point of sale.  (Def.'s Resp. at 13–14.)

### b.    *Preliminary Matter: Burden of Proof*

As a preliminary matter, the parties dispute who carries the burden of proof on whether

Defendant made a statutorily compliant offer.  It is no surprise that Plaintiff urges the burden rests

with the insurer.  (Pls.' Br. at 8.)  Defendant counters that because Plaintiffs seeks reformation of

the Policy, Tenth Circuit law places the burden of proof on Plaintiffs.  (Def.'s Resp. at 11–12

n.2.)

This issue is one of first impression for this court and the Tenth Circuit.  Section

10–4–710 does not explicitly state which party has the burden of proof in establishing whether or

not a statutorily compliant offer was made.  *See* Colo. Rev. Stat. § 10–4–710(2)(a).  The only

case identified by any party directly addressing this issue is an unpublished opinion from a Boulder

County district court, which I find persuasive.  In *Hallauer v. Farmers Insurance Exchange*, the

court held "that the statutory language of [section] 10–4–710 and the clear trend in other states

compels a ruling which places the burden on the insurer to prove that statutorily-required

enhanced PIP benefits was offered."   Boulder Cty. Dist. Ct. 03CV2251 at 4 (Sept. 26, 2005).  In

support, the court points to language in the statute suggesting that the statutory directives fall

upon the shoulders of the insurer.  *Id.* n.3 ("The 'shall offer' mandate in [section] 10–4–710 leads

to the sound conclusion that the insurer must introduce sufficient evidence of its efforts to offer

supplemental enhanced PIP benefits.").  In addition, the court notes that "the means of proving

that an offer of enhanced benefits was made are peculiarly within the insurer's control." *Id.*
Finally, the court's research, as well as an my independent review, reveals that states with similar
statutory schemes have found the burden of proof to rest with the insurer. *Id.* at 4 n.1. (citing
*Brill v. U.S. Auto. Ass'n*, 950 P.2d 695 [Haw. 1998]; *Mason v. United Auto. Servs. Ass'n*, 697
A.2d 388 [Del. 1997]; *Murray v. Woodward*, 697 N.E.2d 265 [Ohio App. 1997]).  I find the
Boulder County District Court's reasoning sound and supported by the *Brennan* court's
statement that the "directive of [section] 10–4–710 is to the insurer, not the insured." *See* 961
P.2d at 553.

Defendant proffers one case that purportedly counsels against this result: *Agee v.
Travelers Indemnity Co.*, 396 F.2d 57 (10th Cir. 1968).  (Def.'s Resp. at 11–12 n.2.)  *Agee*
interprets Oklahoma law and does not address a statutory scheme similar to CAARA.  *See Agee*,
396 F.2d 57.  Instead, the case exclusively contemplates Oklahoma's contract reformation law.
*See id.* at 59–60.  Thus, the case is wholly unpersuasive on the question of the burden of proof in
establishing statutory compliance or non-compliance.  Based on the foregoing, I find the insurer
bears the burden of establishing that it made a statutorily compliant offer of extended PIP
coverage.  Accordingly, to prevail on their motion, Plaintiffs must point to an absence of sufficient
evidence to establish the claim or defense that Defendant is obligated to prove at trial.  *See*
*Celotex*, 477 U.S. at 322–23.

### c.      The Offer at Point of Sale

Plaintiffs argue Defendant's offer of extended PIP benefits at the point of sale in 1996 was deficient because it failed to provide coverage for guest occupants and pedestrians.  (Pls.' Br. at 7–9.)  Defendant counters that its offer was compliant with Colorado law as interpreted and enforced prior to the *Brennan* decision in 1998.  (Def.'s Br. at 13.)  Defendant's argument is disingenuous.  Put simply, the *Brennan* court did not change the law; it merely interpreted a statutory provision that was already in place.  *See* 961 P.2d 550; *Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1579 (11th Cir. 1993) (noting a court's "role in statutory interpretation is to uphold legislative intent, not to make new law").  The Tenth Circuit made this clear when it recognized that "[b]ecause *Brennan* involved the interpretation of a statute enacted prior to the time of [the disputed insurance policy] was issued, it did not establish a new principle of law." *Clark I*, 319 F.3d at 1242.  Although, the insurer in *Brennan* acted prior to the decision, it was subject to the law as interpreted in that decision; Defendant has identified no rationale for why it should fare any differently.  (*See* Def.'s Resp. at 13.)  Thus, at the time of the issuance of the Policy in March 1996, Defendant was legally obligated to offer Ms. Bannister a policy that included extended PIP coverage for all categories of eligible injured persons, specifically including named insureds, resident relatives, guest occupants, and pedestrians.  *See Clark I*, 319 F.3d 1234; *Brennan*, 961 P.2d 550.

Next, Defendant argues that Colorado law does not require an insurer to actually list all of the types of persons covered by APIP benefits.  (Def.'s Resp. at 13–14.)  Defendant points to *Hill v. Allstate Insurance Co.*, No. 04-cv-0865-REB-CBS, 2006 U.S. Dist LEXIS 4634 (D. Colo.

Jan. 24, 2006) in support.  (*Id.* at 13.)  In *Hill*, it appears that the insurer failed to designate which

parties were covered by APIP benefits.  2006 U.S. Dist. LEXIS 4634, at * 18.  The court found

"as a matter of law that [section 10–4–710] did not require [the insurer] to list the types of

persons who were covered by PIP and APIP coverages, including pedestrians," when making an

offer.  *Id.*  Putting aside the fact that this unpublished district court opinion is non-binding on this

court, Defendant did not, in the instant case, fail to list the persons covered by extended PIP.

(*See* Def.'s Br., Ex. A–6 [1996 PIP Disclosure Form].)  Instead, the 1996 PIP Disclosure Form

signed by Ms. Bannister explicitly stated that extended PIP benefits were available "to you and

any family member."  (*Id.*)  Although this court finds the plain language of the offer implies that

only the insureds and their family members would be eligible for APIP benefits, "if any ambiguity

existed, the maxim *expressio unius est exclusio alterius*—the mention or inclusion of the thing

implicates the exclusion of another, would dictate the same result."  *Williamson v. Kay (In re

Villa W. Assocs.)*, 146 F.3d 798, 805 (10th Cir. 1998).  Thus, although it *may* be true that an

insurer's silence in referencing the persons covered by APIP does not permit an inference of

exclusion, it is certainly true that when an insurer lists some persons covered by APIP coverage,

those not included on the list are considered *excluded*.[4]  *See id.*  Accordingly, Defendant's offer of

extended PIP benefits at the point of sale was non-compliant with CAARA because the offer did

not extend to pedestrians and guest occupants.  *See Clark I*, 319 F.3d at 1241 (finding failure to

---

[4]Moreover, nowhere does Defendant assert that the extended PIP benefits offered to Ms.
Bannister at the point of sale *actually* covered pedestrians and non-family passengers.  (Def.'s
Resp. at 13–15.)

offer extended PIP coverage of pedestrian rendered the offer in violation of CAARA); *Brennan*, 961 P.2d at 552–54 (same).

### d.      2001 PIP Endorsement as an Offer

The parties do not dispute that Defendant's 2001 PIP Endorsement was compliant with *Brennan.* (Pls.' Br., Statement of Undisputed Material Facts ¶ 12; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 12.)  However, Plaintiffs claim Defendant has not met its burden of showing that the Insureds were ever offered the 2001 PIP Endorsement benefits.  (Pls.' Br. at 8–9.)  Defendant counters that in March of 2002, when the Insureds renewed the Policy, the insurer sent them a copy of the Policy, which contained the 2001 PIP Endorsement.  (Def.'s Resp. at 14.)  Defendant supports its claim with the affidavit of Hall D. Crowder, Assistant Vice President of Product Management Personal Auto for Defendant.  (Def.'s Br., Ex. A–9 [Crowder Aff.].)  Mr. Crowder states: "At the time of renewal of the Policy in March 2002, Liberty Mutual sent the [Insureds] a copy of the Policy, . . . which contained the 2001 PIP Endorsement."  (*Id.*)  Plaintiffs contend that Mr. Crowder's statements carry no weight because they are not based on personal knowledge.  (Pls.' Resp. at 5–6.)  I agree.

Federal Rules of Civil Procedure 56(e) requires that in motions for summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge."  Fed. R. Civ. P. 56(e) (2006).  "Under the personal knowledge standard, an affidavit is inadmissible if 'the witness could not have actually perceived or observed that which he testifies to.'"  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 [10th Cir. 1997].)  In this case, it is uncontested that Mr. Crowder

did not begin working for Defendant until after the Accident; thus, he has no personal knowledge of the interaction between the parties during the relevant time period. (*See* Pls.' Resp., Ex. 26 at 3 [Crowder Dep.].)  Moreover, neither Mr. Crowder's affidavit nor his deposition reveal he had any personal knowledge of Defendant's mailing procedures. (*See id.*; Def.'s Br., Ex. A–9 [Crowder Aff.].)  "While the law presumes receipt of a properly addressed piece of mail there is no [evidence] on record permitting any inference that [the 2001 PIP Endorsement] was actually mailed" to the Insureds. *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1340 (10th Cir. 1998) (citation omitted).

Defendant's burden in allowing this court to draw an inference that the 2001 PIP Endorsement was mailed is not onerous.  Defendant could have produced documentary proof or testimony based on personal knowledge that: (1) the item was properly addressed, had sufficient postage, and was deposited in the mail; or (2) Defendant's customary mailing practices allow an inference that the item was mailed. *See id.*; *Konst v. Fla. E. Coast Ry. Co.*, 71 F.3d 850, 851 (11th Cir. 1996) (finding presumption of receipt arises based on proof that item was properly addressed, had sufficient postage, and was deposited in the mail); *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983) (placing letters in the mail may be proved by circumstantial evidence including customary mailing practices used in the sender's business and testimony that letter was seen in envelope and sealed).  Because Defendant has produced no evidence that it made a statutorily compliant offer at any time prior to the Accident, Plaintiffs have satisfied their burden of showing an absence of sufficient evidence to establish receipt of a statutorily compliant offer during the relevant time period. *See Celotex*, 477 U.S. at 322–23.

### e.     Reformation

Plaintiffs seek reformation of the Policy to include enhanced benefits as of the issuance date of the Policy based on Defendant's failure to offer said benefits in full conformity with CAARA.  (Pls.' Br. at 6–9.)  Generally, under Colorado law, "reformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties." *Carder, Inc. v. Cashi*, 97 P.3d 174, 180–81 (Colo. Ap. 2003) (citing *Md. Cas. Co. v. Buckey Gas Prods. Co.*, 797 P.2d 11, 13 [Colo. 1990]).  As is relevant in the instant case,  "when . . . an insurer fails to offer the insured optional coverage that satisfies [CAARA], additional coverage in conformity with the offer mandated by statute will be incorporated into the policy."  *Brennan*, 961 P.2d at 554 (citing *Thompson v. Budget Rent-A-Car Sys., Inc.*, 940 P.2d 987, 990 [Colo. Ct. App. 1996].)  Essentially, when a policy is violative of CAARA, reformation is often the remedy to assure that coverage will meet the statutory minimum.  *Clark II*, 292 F. Supp. 2d at 1266. Plaintiffs argue that reformation is appropriate because Defendant did not offer extended PIP benefits to guest occupants and pedestrians, in violation of section 10–4–710.  Defendant counters that this "hypertechnical argument fails as a matter of law" based on *Agee*.  (Def.'s Resp. at 2.)  As noted above, *Agee* addresses Oklahoma state contract reformation law, not the reformation requirement peculiar to CAARA and similar statutory regimes.  396 F.2d 57.  Thus, *Agee* is wholly inapposite.  Further, Defendant's suggestion that its failure to offer coverage to pedestrians and guest occupants is a hypertechnical error that should not result in reformation is belied by cases from both the state of Colorado and the Tenth Circuit.  In both *Brennan* and *Clark I*, the courts found that because the insurer failed to offer extended PIP benefits that

covered pedestrians—and thus did not satisfy CAARA's requirements—"the offer mandated by statute [was to] be incorporated into the policy." *Clark I*, 319 F.3d at 1241; *Brennan*, 961 P.2d at 554.

I find, however, that *Brennan* and *Clark I* are not on all fours with the instant action. In those cases, third-party *pedestrians* sought reformation of the insurance contract based on the insurer's offer of extended PIP benefits that specifically *excluded pedestrians*. 961 P.2d 550; 319 F.3d 1234. Here, Plaintiffs seek reformation of the Policy based on Defendant's offer of extended PIP benefits that *did not* exclude Plaintiffs from coverage. (*See* Def.'s Br., Ex. A–6 at 4 [1996 PIP Disclosure Form].) Plaintiffs are neither pedestrians nor guest occupants; instead, they are a named insured and a family member, both of whom were explicitly covered in Defendants offer of APIP benefits. (*Id.*) Accordingly, "the APIP [benefits] offered to [Ms. Bannister], while defective with respect to pedestrians and non-family member occupants, would have covered [Plaintiffs]." *May v. Travelers Prop. Cas. Co. of Am.*, No. 05–cv–00214–WYD–CBS, 2006 U.S. Dist. LEXIS 69340, at *8 (D. Colo. Sept. 26, 2006). By refusing Defendant's offer of APIP benefits, Ms. Bannister's "expressed intention was to decline Defendant's offer of [A]PIP benefits" to cover herself, her husband, and their family members. *Morris v. Travelers Indem. Co. of Am.*, No. 05–cv–00727–EWN–BNB, 2006 U.S. Dist. Lexis 46568, at *32–33 (D. Colo. July 7, 2006). Thus, "[w]ere this court to reform the [Policy] to reflect the higher amount of PIP benefits, this would not reflect the intent of the parties." *Id.*; *see also Sigala v. Hartford Underwriters Ins. Co.*, No. 04–RB–0196, 2005 U.S. Dist. LEXIS 34439, at *17 (D. Colo. Aug. 29, 2005) (refusing reformation because "[t]he fact that [the] policy did not accurately describe

APIP coverage did not mislead [the plaintiff] about the options available to her, and did not cause her to make a coverage selection based on inaccurate information"). Based on the foregoing, I find Plaintiffs are not entitled to seek reformation of the Policy for Defendant's failure to make a statutorily compliant offer, and Defendant is entitled to summary judgment on the issue.

> ### f.     The Manner in Which the Offer Was Made

Plaintiffs also argue that reformation is appropriate because Defendant failed to make an offer of enhance PIP coverage to Ms. Bannister in a manner that was commercially reasonable under the test of *Allstate v. Parfrey*, 830 P.2d 905 (Colo. 1992). In *Parfrey*, the Colorado Supreme Court held that an insurer's statutory duty under Colorado Revised Statutes section 10–4–609(b)(2), which requires an insurer's offer of uninsured motorist coverage higher than the minimum statutory liability limits, must be "performed in a manner reasonably calculated to permit the potential purchaser to make an informed decision." *Parfrey*, 830 P.2d at 913.

> In determining whether an insurer has fulfilled its statutory duty, a court may appropriately consider such factors as the clarity with which the purpose of . . . coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of . . . coverage could be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer.

*Id.* at 913. This circuit has not yet ruled on whether the *Parfrey* standard is the correct standard by which to evaluate the sufficiency of an insurer's APIP offer, but several district courts have applied the test. *See, e.g.*, *Johnson v. State Farm Mut. Auto. Ins. Co.*, 158 Fed. App'x 119, 121–22 (10th Cir. 2005) (noting the trial court's use of the *Parfrey* test); *Lust v. State Farm Mut. Auto. Ins. Co.*, 412 F. Supp. 2d 1185, 1191–92 (D. Colo. 2006). I need not decide the matter

here, as I find that even under *Parfrey*, Defendant's offer passes muster.  Plaintiffs argue that

Defendant has put forth insufficient evidence to show that an adequate oral or written offer was

made.  (Pls.' Br. at 9–10; Pls.' Supplemental Br. Regarding Mots. for Summ. J. at 3 [filed Nov.

13, 2006] [hereinafter "Pls.' Supplement"].)  Defendant counters that uncontroverted evidence

establishes that Ms. Bannister received both an oral and written offer at the point of sale.  (Def.'s

Resp. at 15.)  I address only the written offer, as I find it was sufficient under *Parfrey*.

Defendant contends that during Ms. Bannister's meeting with Mr. Maxey, she received a

four-page document carefully delineating Defendant's available PIP and APIP coverages.  (Def.'s

Br., Statement of Undisputed Material Facts ¶ 18; *denied at* Pls.' Resp., Resp. to Statement of

Undisputed Material Facts ¶ 18; *see* Def.'s Br., Ex. A–6 [1996 PIP Disclosure Form].)  In

Plaintiffs' response to Defendant's motion for summary judgment, they claim Ms. Bannister only

received the fourth page of this document, which is the page containing her signature.  (Pls.'

Resp., Resp. to Statement of Undisputed Facts ¶ 7.)  Defendant counters that in Mr. Maxey's

deposition, he testified that the 1996 PIP Disclosure From was a four-page document that he

always reviewed in its entirety with prospective clients.  (Def.'s Supplement to Summ. J. Mots. at

3 [filed Nov. 10, 2006] [hereinafter "Def.'s Supplement"]; Pls.' Supplement, Ex. 29 at 3, 8

[Maxey Dep.].)  Moreover, as Defendant points out, in Ms. Bannister's deposition, she *never*

claimed that she did not receive, review, or discuss a four-page PIP Disclosure Form with Mr.

Maxey.  (*See* Def.'s Br., Ex. A–4 [Bannister Dep.].)  Instead, she repeatedly stated that she did

not recall: (1) whether she discussed extended PIP benefits with Mr. Maxey; (2) the forms she

reviewed; or (3) the forms she signed.  (*Id.*, Statement of Undisputed Facts ¶¶ 12–14; *admitted in*

-20-

*relevant part at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 12–14; *see id.*, Ex. A–4 at 6–9 [Bannister Dep.].)  Mr. Maxey's deposition testimony, therefore, constitutes uncontroverted evidence that Ms. Bannister received a four-page document explaining PIP and extended PIP benefits.  Moreover, Ms. Bannister's signature on page four shows that during the course of the meeting, she had access to the document, and—consequently—the opportunity to question Mr. Maxey regarding the benefits.  (*See* Def.'s Br., Ex. A–6 at 4 [1996 PIP Disclosure Form].)  Plaintiffs' conclusory allegations to the contrary do not serve to create a genuine issue of material fact.  *Baker v. Penn Mut. Life Ins. Co.*, 788 F.2d 650, 653 (10th Cir. 1986) ("Conclusory allegations . . . do not establish an issue of fact" in motions for summary judgment).

Accordingly, I find that under the "totality of the circumstances," Defendant's offer was "reasonably calculated to permit the potential purchaser to make an informed decision."  *Parfrey*, 830 P.2d at 913; *see Johnson v. State Farm Mut. Auto Ins. Co.*, 158 Fed. App'x 119, 121–23 (10th Cir. 2005) (upholding trial court's grant of summary judgment in favor of insurer where evidence established that insured received a pamphlet describing APIP coverages and had the opportunity to obtain additional information).[5]  Based on the foregoing, Plaintiffs are not entitled to summary judgment as to the manner in which Defendant made its offer; contrarily, Defendant is entitled to summary judgment on the issue.

_____

[5]Plaintiffs suggest that even if Ms. Bannister did receive the four-page 1996 PIP Disclosure Form, the offer violates *Parfrey* because it excludes coverage of pedestrians and guest occupants.  (Pls.' Supplement at 3–4.)  As discussed above, however, I have already determined that Plaintiffs' have no right to seek reformation based on this deficiency.  (*See Analysis* § 2av, *supra.*)

> ### g.   *Summary Disclosure Form*

Plaintiffs' final attempt at reformation is based on Defendant's alleged violation of

Colorado Revised Statutes section 10–4–111.  (Pls.' Br. at 11–12.)  This statute required an

insurer to provide to every applicant at the time of the initial insurance purchase a summary

disclosure form, containing a "simple explanation of the major coverages and exclusions of such

policies of insurance together with a recitation of general factors considered in cancellation,

nonrenewal, and increase in premium situations."  Colo. Rev. Stat. § 10–4–111.  Plaintiffs admit

Defendant certified such a form for use but argue Defendant cannot produce evidence that the

form was provided to Ms. Bannister.  (Pls.' Br. at 11–12.)  As Defendant points out, Mr. Maxey

testified at his deposition that it was his custom to place the form within the marketing materials

provided to prospective auto insurance clients.  (Def.'s Supplement at 4; Pls.' Supp., Ex. 29 at 9

[Maxey Dep.].)  According to Plaintiffs, this testimony should be discounted because "Mr. Maxey

stated that it is not something he does every time, and he has no recollection of whether he

provided such a form to Ms. [Bannister]."  (Pls.' Supp. at 4.)  I find Plaintiffs' argument wholly

disingenuous.  First, Mr. Maxey made clear that the only times he did not include the Summary

Disclosure Form in the marketing packet is when he "knew [he] wasn't going out for an

automobile policy."  (*Id.*, Ex. 29 at 9 [Maxey Dep.].)  Further, he stated that if he were going to

meet with an applicant regarding an auto insurance policy, he would "absolutely" give them the

form.  (*Id.*)  Second, although Mr. Maxey testified that he did not remember the specifics of his

meeting with Ms. Bannister a decade prior, his testimony regarding his custom of distributing this

form is admissible evidence tending to prove that he did in fact give the form to Ms. Bannister at

their initial meeting. *See* Fed. R. Evid. 406 (2006) (allowing evidence of habit or routine practice of an organization to "prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice"). Plaintiffs have presented no evidence to the contrary. Ms. Bannister clearly stated in her deposition that: (1) she remembers receiving a packet of paperwork from Mr. Maxey; and (2) she could not remember what specific forms she was given or reviewed. (Def.'s Br., Ex. A–4 at 6–7 [Bannister Dep.].) Once again, Plaintiffs' conclusory allegation that Ms. Bannister did not receive the Summary Disclosure Form simply cannot serve to create a genuine issue of material fact. *Baker*, 788 F.2d at 653. Accordingly, whereas Plaintiffs are not entitled to summary judgment on their claim regarding the Summary Disclosure Form, Defendant is entitled to summary judgment on the issue. Based on the foregoing, I deny each of Plaintiffs' bases for reformation and grant Defendant's motion for summary judgment on these bases.

### h. *Other Claims*

Defendant seeks summary judgment on Plaintiffs' other claims, because they "necessarily depend upon a reformation of the Policy." (Def.'s Br. at 17.) Plaintiffs do not respond to Defendant's argument. (*See* Pls.' Resp.) This court finds that Defendant is entitled to summary judgment on Plaintiffs' claims for breach of contract, willful and wanton statutory bad faith, breach of implied covenant of good faith and fair dealing, and common law bad faith. (*See* Compl. ¶¶ 37–61.) In the absence of a viable ground for reformation of the Policy to incorporate a higher level of benefits, Plaintiffs have no valid basis for the above claims. *See Morris*, 2006 U.S. Dist. LEXIS 46568, at *34–35; *Sigala*, 2005 U.S. Dist. LEXIS 34439, at *18–22.

*3.*     *Conclusions*

Based on the foregoing it is therefore ORDERED as follows:

1.      Defendants' motion (# 34) for summary judgment on Plaintiffs' CAARA claims is

GRANTED.

2.      Defendants' motion (# 35) for summary judgment on Kurt Warren's claims is

DENIED as moot.

3.      Plaintiff's motion (# 38) for partial summary judgment is DENIED.

4.      The clerk shall forthwith enter judgment in favor of Defendant and against

Plaintiffs, dismissing the case with prejudice.  Defendant may have its costs by filing a bill of costs

within eleven days of the date on which this order is filed.

Dated this 15th day of February, 2007.


                                    BY THE COURT:


                                    s/ Edward W. Nottingham
                                    EDWARD W. NOTTINGHAM
                                    United States District Judge