IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 05-cv-01891-PAB-MEH

KAREN WARREN,
Personal Representative of the Estate of Kirk Warren,

      Plaintiff,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
a Massachusetts insurance company,

      Defendant.
_____

**ORDER**
_____

      This matter is before the Court on defendant's motion for partial summary

judgment [Docket No. 148], plaintiff's motion for leave to supplement plaintiff's

response to defendant's motion for partial summary judgment [Docket No. 153], and

plaintiff's motion to substitute party [Docket No. 183].  The motions are fully briefed and

ripe for disposition.  Because defendant's motion for partial summary judgment and

plaintiff's motion to substitute party involve many of the same issues, the Court will

consider them together.

**I.  BACKGROUND**

    **A.  <u>Factual Background</u>**

      On September 29, 2002, Kurt Warren was driving his 1983 Chevrolet Suburban

with his brother, Kirk Warren, as a passenger, when he lost control and rolled his

vehicle.  At the time of the accident, Kurt Warren and the Suburban were insured under

an automobile liability insurance policy issued by defendant Liberty Mutual Fire

Insurance Company ("the Policy").  Liberty Mutual first issued the Policy to Kurt Warren

in March of 1996 when Deborah Bannister, Kurt's wife, executed the Policy.  At the time

that Ms. Bannister applied for the Policy, she met with Liberty Mutual's sales

representative, Doug Maxey.  At this meeting, Ms. Bannister executed an automobile

insurance policy application together with the fourth page of a Colorado personal injury

protection ("PIP") options disclosure form ("1996 PIP Disclosure Form").  The 1996 PIP

Disclosure Form provides a variety of options with respect to "Basic PIP coverage" as

well as "Added PIP coverage" or "APIP coverage."  The form says the following about

the APIP coverage:

> ADDED PERSONAL INJURY PROTECTION BENEFITS
>
> You may elect to purchase an Added PIP Medical Expense option, and [sic]
> Added PIP Work Loss Option, or a combination of these two options applying to
> you and any family member for a reasonable increase in premium.  If you elect
> either of the following, the $50,000 per person limit of benefits is increased to
> $200,000 per person for any one accident.
>
> i)      ADDED PIP MEDICAL EXPENSES – provides the same medical expense
>         coverage as Basic PIP except that losses are not limited to those incurred
>         within five (5) years after the date of the accident.
>
> ii)     ADDED PIP WORK LOSS – provides the same Work Loss Coverage as
>         Basic PIP except there is no 52 week time limitation and coverage is not
>         subject to a weekly dollar limit.
>
> iii)    ADDED PIP MEDICAL EXPENSES AND ADDED PIP WORK LOSS –
>         provides a combination of i) and ii) above.

Docket No. 148 at 6-7.

At the time Liberty Mutual first issued the Policy to Kurt Warren and at the time of

the accident that injured the Warren brothers, the Colorado Auto Accident Reparations

2

Act ("CAARA"), Colo. Rev. Stat. §§ 10-4-701 to -726 (2002), contained mandates related to APIP coverage.[1]  For example, at the time of the accident in 2002, CAARA required that:

> Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-706, at the option of the named insured:
>
> (I)    Compensation of all expenses of the type described in section 10-4- 706(1)(b) without dollar or time limitation; or
>
> (II)   Compensation of all expenses of the type described in section 10-4- 706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10-4-710(2)(a) (2002).

Before 1998, it was unclear exactly to whom APIP coverage had to apply and, as a result, what offer of APIP coverage conformed with CAARA's mandate.  In 1998, however, the Colorado Court of Appeals held in *Brennan v. Farmers Alliance Mutual Insurance Co.* that an insurer's offer of APIP coverage must specifically reference four categories of individuals: 1) the named insureds; 2) resident relatives of the named insureds; 3) passengers occupying the insured's vehicle with the consent of the insureds – the so-called guest occupants; and 4) pedestrians who are injured by the covered vehicle.  961 P.2d 550 (Colo. App. 1998).  Where an insurer fails to offer APIP coverage for any of these four groups, the policy in question must be reformed to

---

[1] CAARA was repealed by Colo. Rev. Stat. § 10-4-726 (2002), effective July 1, 2003.

include coverage for the omitted group or groups. *See*, *e.g.*, *Warren v. Liberty Mut. Fire Ins. Co.*, 555 F.3d 1141, 1147-48 (10th Cir. 2009); *see generally Thompson v. Budget Rent-A-Car Sys., Inc.*, 940 P.2d 987, 990 (Colo. App. 1996) ("When an insurer fails to offer the insured optional coverage that it is statutorily required to offer, additional coverage in conformity with the required offer is incorporated into the agreement by operation of law.").

It was not until December 21, 2001 that Liberty Mutual modified its PIP endorsement in its policies to comply with the *Brennan* decision by extending APIP coverage to guest occupants and pedestrians. This Court previously concluded, and the Tenth Circuit affirmed, that there was insufficient evidence that the insureds, Kurt Warren and Deborah Bannister, received this endorsement or any other notification that APIP coverage was available to guest occupants and pedestrians. *See Warren*, 555 F.3d at 1146.

Following the accident, both Kurt and Kirk Warren submitted claims to Liberty Mutual. Liberty Mutual paid benefits to the brothers under Basic PIP coverage, but not under APIP coverage. Believing they were entitled to have the Policy reformed to include APIP coverage, Kurt and Kirk Warren filed a complaint in this Court on September 29, 2005.

## B. Procedural Background

Plaintiffs Kirk and Kurt Warren filed a complaint in this Court asserting five claims: (1) reformation of the insurance contract; (2) breach of insurance contract; (3) willful and wanton statutory bad faith; (4) breach of the implied covenant of good faith

and fair dealing; and (5) common law bad faith.  In July 2006, the parties filed cross-motions for summary judgment [Docket Nos. 34, 38] and on February 15, 2007, Chief Judge Edward W. Nottingham granted summary judgment in favor of defendant on all of plaintiffs' claims [Docket No. 67].  The Court held that defendant did not violate the rules regarding offers and disclosure contained in §§ 10-4-706(4)(a) and 10-4-111 of the Colorado Revised Statutes or the standard from *Allstate Insurance Co. v. Parfrey*, 830 P.2d 905, 913 (Colo. 1992) ("[A]n insurer has a one-time duty to inform an insured in a reasonable manner calculated to permit the insured to make an informed decision on whether to purchase [the] coverage . . . ."); *see Warren*, 555 F.3d at 1147.  However, the Court concluded that defendant did violate § 10-4-710(2)(a) by failing to offer APIP coverage to guest occupants and pedestrians.  *See Warren v. Liberty Mutual Fire Ins. Co.*, 505 F. Supp. 2d 770, 780-81 (D. Colo. 2007).  Nonetheless, because the Court concluded that both plaintiffs were covered within the 1996 PIP Disclosure Form's reference to "you and any family member," the Court deemed the violation of § 10-4-710(2)(a) to be immaterial.

The Warren brothers appealed the Court's February 15, 2007 decision.  On February 11, 2009, the Tenth Circuit affirmed the district court's conclusions regarding §§ 10-4-706(4)(a) and 10-4-111 and *Parfrey*.  However, after defendant conceded during oral argument that the 1996 PIP Disclosure Form's reference to "you and any family member" did not, in fact, cover Kirk Warren, the Tenth Circuit revisited the § 10-4-710(2)(a) issue.  The court first addressed defendant's argument, which was raised initially before Judge Nottingham, that pursuant to *Hill v. Allstate Ins. Co.,* 479 F.3d 735

5

(10th Cir. 2007), the offer made to Deborah Bannister and Kurt Warren was sufficient. The Tenth Circuit affirmed the Court's conclusion that *Hill* was inapplicable. *See Warren*, 555 F.3d at 1146. The Tenth Circuit also agreed that the undisputed evidence indicated defendant failed to provide Kurt Warren and Deborah Bannister with proper notice of the APIP coverage for guest occupants and pedestrians. *See Warren*, 555 F.3d at 1146. Finally, because Kirk Warren qualified as a guest occupant rather than a "family member," the Tenth Circuit concluded that he was entitled to reformation of the Policy so as to add APIP benefits covering him. *See Warren*, 555 F.3d at 1147. As a result, the Court of Appeals reversed the entry of summary judgment in favor of defendant on Kirk Warren's claims. *See Warren*, 555 F.3d at 1149. However, because it affirmed the Court's conclusion that Deborah Bannister and Kurt Warren received sufficient notice and offer of APIP benefits covering insured persons such as Kurt Warren, the Tenth Circuit concluded that Kurt was not entitled to reformation. *See Warren*, 555 F.3d at 1147-48. The Tenth Circuit, therefore, affirmed summary judgment against Kurt Warren, thereby resolving all of his claims. *See Warren*, 555 F.3d at 1149.

Having settled the issue of whether the plaintiffs were entitled to reformation of the Policy, the Tenth Circuit remanded Kirk Warren's case with instructions that this Court decide the details of reformation. On February 19, 2010, the Court ordered the contract reformed [Docket No. 124]. The Court set the date of reformation at March 13, 2002, the date defendant renewed the Policy, and ordered that the reformed policy was not subject to an aggregate cap. On July 1, 2010, defendant moved for partial

summary judgment, seeking summary judgment with respect to plaintiff's third, fourth

and fifth causes of action, and demands for exemplary damages and attorneys' fees

[Docket No. 148].  On September 13, 2010, plaintiff filed notice of Kirk Warren's death

[Docket No. 156] and, on October 13, 2010, moved to substitute Kirk Warren's wife as

the party of record, arguing that all of Kirk Warren's claims survived [Docket No. 183].

On October 15, 2010, the Court ordered that Karen Warren be substituted as plaintiff,

without prejudice to defendant challenging the survival of Kirk Warren's claims and the

Court determining which of his claims can now be pursued by his estate [Docket No.

188].

## II.  STANDARDS OF REVIEW

### A.  <u>Motion for Substitution</u>

Federal Rule of Civil Procedure 25 allows for the substitution of a party where

the original party has died and "the claim is not extinguished."  Fed. R. Civ. P. 25(a)(1).

The Court's jurisdiction in this case is based on diversity; therefore, Colorado law

controls as to whether Kirk Warren's claims survive his death.  *See Hilbrands v. Far*

*East Trading Co.*, 509 F.2d 1321, 1323 (9th Cir. 1975) (Rule 25 is procedural, but

question of whether a claim survives is substantive).  Thus, the Court turns to

Colorado's survival statute, which provides:

> All causes of action, except actions for slander or libel, shall survive and
> may be brought or continued notwithstanding the death of the person in
> favor of or against whom such action has accrued, but punitive damages
> shall not be awarded nor penalties adjudged after the death of the person
> against whom such punitive damages or penalties are claimed; and, in tort
> actions based upon personal injury, the damages recoverable after the
> death of the person in whose favor such action has accrued shall be
> limited to loss of earnings and expenses sustained or incurred prior to

death and shall not include damages for pain, suffering, or disfigurement, nor prospective profits or earnings after the date of death.

Colo. Rev. Stat. § 13-20-101(1).

### B. Motion for Summary Judgment

"In diversity cases like this one, the substantive law of the forum state governs the analysis of the underlying claims . . . but [federal courts] are governed by federal law in determining the propriety of . . . summary judgment." *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007) (internal quotations omitted).  According to Federal Rule of Civil Procedure 56, a court should grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986).  A movant who bears the burden at trial must submit evidence to establish every essential element of its claim.  *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(c).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119

8

F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III.  ANALYSIS

Defendant's motion for partial summary judgment and plaintiff's motion for substitution involve overlapping issues.  In both its motion for partial summary judgment and its response to plaintiff's motion for substitution, defendant raises the question of whether plaintiff can recover for defendant's bad faith failure to pay benefits to Kirk Warren if no obligation to pay benefits existed before the Court's reformation order.  Because this issue impacts all of plaintiff's claims besides plaintiff's reformation claim, the Court will address it at the outset.  The Court will then discuss each of plaintiff's claims individually, assessing first whether the claim survives Kirk Warren's death and, if it does, whether summary judgment is nonetheless appropriate on that claim.

### A.  <u>Breach of Contract and Bad Faith Claims Post-Reformation</u>

Plaintiff's claims are based at least in part on the allegation that defendant failed to pay APIP benefits due to Kirk Warren under CAARA before the Court ordered reformation of the Policy.  In *Warren*, the Tenth Circuit held that Kirk Warren was entitled to reformation of the Policy and remanded with instructions that the Court decide the date of reformation and "the viability of Kirk Warren's claims for breach of contract, willful and wanton statutory bad faith, breach of the implied covenant of good faith and fair dealing, and common law bad faith" which were "depend[ant] on the effective date of reformation."  555 F.3d at 1148-49.  In its reformation order, the Court

set the date of reformation at March 13, 2002, the date of the renewal of the Policy and held that, based on its selection of this date, "Kirk Warren's additional breach of contract and bad faith claims are not automatically precluded."  Docket No. 124 at 35. Defendant now argues that it cannot be liable for breach of contract, willful and wanton statutory bad faith, breach of the implied covenant of good faith and fair dealing, or common law bad faith because the only contract existing between itself and Kirk Warren is the reformed Policy and defendant's obligations under that Policy did not exist until the Court ordered reformation.

Assessment of defendant's argument requires an examination of a line of cases interpreting reformation of insurance policies found deficient under CAARA and addressing the viability of other claims after reformation.  In 1998, *Brennan* clarified the four categories of individuals to whom insurers had to offer APIP coverage, but also held that the insurance company defendant "should not necessarily have anticipated" this interpretation and, therefore, "[defendant's] contractual obligation to pay additional PIP benefits to [plaintiff] did not arise until the insurance policy was judicially reformed." *Brennan,* 961 P.2d at 556.  It also noted that "there is authority for the proposition that, in insurance law, until an insurance contract is reformed, the insurer has no obligation to conform to such 'reformed' policy."  *Id.* (citing 2 Couch on Insurance § 26:3 (L. Russ & T. Segalla 3d ed. 1995)).  Because the defendant had no obligation to pay benefits until the reformation order, the court upheld the trial court's dismissal of plaintiff's breach of contract, bad faith breach of contract, fraud, and statutory claims.  *Id.*

In *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234 (10th Cir. 2003) (*"Clark*

*I*"), the Tenth Circuit confronted a similar claim for reformation as well as other common

law and statutory claims.  A pedestrian hit by defendant's insured driver sought

reformation of the driver's policy because defendant had not offered the driver APIP

coverage for pedestrians, as required by CAARA.  The accident occurred prior to

*Brennan* and, therefore, the district court held that the defendant was not bound by

*Brennan* because it did not apply retroactively.  *Id.* at 1240.  *Clark I* reversed, holding

that because *Brennan* interpreted a pre-existing statute it did not establish a new

principle of law and must be applied retroactively.  The court held that the plaintiff was

thus entitled to reformation, but remanded for the district court to determine the

effective date of reformation.  *Id.* at 1242-43.  *Clark I* explained:

> The viability of [plaintiff's] breach of contract, breach of the duty of good
> faith and fair dealing, and willful and wanton breach of contract claims
> depends on the effective date of reformation.  These contract, tort, and
> statutory claims, however, will remain viable only if the district court in the
> exercise of its equitable power determines that reformation should occur
> as of a date preceding its order of reformation.  Only under those
> circumstances would there be an extant contract, tort, or statutory duty to
> be breached.  Conversely, if reformation is ordered to correspond to the
> date of entry of the order of reformation, there would be no pre-existing
> duty to pay extended PIP benefits.

319 F.3d at 1244 (citing *Brennan*, 961 P.2d at 556-57).  On remand, the district court

set the effective date of reformation at the date of its order of reformation.  *Clark v.*

*State Farm Mut. Auto. Ins. Co.*, 292 F. Supp. 2d 1252, 1261-62 (D. Colo. 2003) ("*Clark*

*II*").  It did so in part because the evidence showed that defendant, who had issued the

policy and received plaintiff's claim before *Brennan*, could not have predicted *Brennan*

and relied on a reasonable interpretation of CAARA that was rejected in *Brennan*.  *Id.*

The court therefore dismissed plaintiff's remaining claims.  *Id.* at 1269.  The Tenth

Circuit affirmed this holding on appeal.  *Clark v. State Farm Mut. Auto. Ins. Co.,* 433

F.3d 703, 711-13 (10th Cir. 2005) ("*Clark III*").

        These issues arose again in *Fincher v. Prudential Property & Casualty Ins. Co.,*

76 F. App'x 917 (10th Cir. 2003) ("*Fincher I*").  The Tenth Circuit once more reversed

the district court, holding that an insurance policy should be reformed pursuant to

*Brennan* and remanded for the district court to determine the reformation date and the

viability of the plaintiff's remaining claims.  *Id.* at 922-23.  The district court ordered that

the policy be reformed as of the date of plaintiff's accident, May 8, 1994.  *Fincher v.*

*Prudential Property & Casualty Ins. Co.*, Civil No. 00-cv-2098-REB-MJW, 2007 WL

2936312 at *2 (D. Colo. Oct. 9, 2007) ("*Fincher II*").  The district court then turned to

plaintiff's claims, which included breach of contract, violation of the covenant of good

faith and fair dealing, and willful and wanton breach of contract.  The district court

granted summary judgment for plaintiff on her breach of contract claim *sua sponte*,

finding that pursuant to the Tenth Circuit's remand and the district court's reformation

order, there was no dispute as to defendant's breach of the reformed policy.  *Id.* at *5-

*6.

        However, the district court in *Fincher II* also granted judgment as a matter of law

in favor of defendant on plaintiff's bad faith claims.  *Id.* at *11.  The district court found

that defendant could not have acted in bad faith because it relied on a reasonable pre-

*Brennan* understanding of CAARA in denying benefits.  *Brennan* was decided after the

policy was issued and after plaintiff's injury.  Plaintiff nonetheless argued that defendant

should have reformed the policy on August 24, 1998, the date the Colorado Supreme

Court denied certiorari in *Brennan,* because defendant should have understood at that time that *Brennan* required APIP offers covering pedestrians.  The district court rejected this argument because the retroactivity of *Brennan*, and thus its application to the policy at issue, was "fairly debatable, at least until the Tenth Circuit issued its rulings in *Clark* and in the present case."  *Id.* at *8.  Because defendant relied on its reasonable belief that *Brennan* did not apply retroactively, it could not have acted in bad faith when it refused to reform the policy until the district court's reformation order.  *See id.* at *9-10. Finally, the district court refused to look at defendant's conduct following *Fincher I* as a basis for bad faith because plaintiff had not amended her complaint to add factual allegations related to this conduct.  *Id.* at *11.

The Tenth Circuit affirmed these holdings in *Fincher v. Prudential Property & Casualty Ins. Co.*, 374 F. App'x 833 (10th Cir. 2010) ("*Fincher III*").  The court agreed that, although after *Brennan* the insurance company "knew or should have known it had to offer APIP coverage to pedestrians," because the policy was issued before *Brennan*, it was unclear until *Clark I* whether *Brennan* applied retroactively and, thus, the insurance company could not know that the policy violated CAARA.  *Id.* at 844.  The court also explained that it was not error for the district court to refuse to consider the defendant's post-*Fincher I* conduct as a basis for bad faith because the defendant "had no legal obligation to pay benefits in accordance with the reformed policy until the policy was actually reformed" and that obligation did not arise until the date of the district court's interlocutory order setting the date of reformation on remand.  *Id.* at 844-45.

In all of these cases, the courts held that the insurance companies did not act in

bad faith in denying plaintiffs' claims because they relied on their reasonable

understandings of the state of the law at the time.  In this case, as the Court found in its

reformation order, the *Brennan* decision and defendant's awareness of it predated the

renewal of the Policy on March 13, 2002.  *See* Docket No. 124 at 27-28.  The accident

at issue here and the Warrens' claims for benefits also both occurred after *Brennan*.

Unlike the defendant in *Fincher* who reasonably believed *Brennan* did not apply

retroactively, defendant here faced only the issue of *Brennan*'s prospective application.

Therefore, it was no longer reasonable for defendant not to make Deborah Bannister

and Kurt Warren a CAARA-compliant offer including guest occupants on March 13,

2002, after *Brennan* had fully clarified the law on the issue.  *See* Docket No. 124 at 27.

The question remains, however, whether defendant's obligation to pay plaintiff

APIP benefits arose on the effective date of reformation, March 13, 2002, or on the

date the Court ordered reformation, February 19, 2010.[2]  Defendant reads *Fincher III*'s

statement that an insurer has "no legal obligation to pay benefits in accordance with the

reformed policy until the policy was actually reformed" to mean that it could not have

breached any duty to plaintiff to pay benefits until the Court ordered reformation.  *See*

374 F. App'x at 844-45.  But this reading would contradict *Clark I*'s instruction that the

---

[2] In addition to arguing that it cannot be liable for failure to pay benefits before the reformation order, defendant also argues that it cannot be liable for any failure to pay benefits after the Court's order because the order is interlocutory and not final.  *See* Docket No. 196 at 12-13, 22-23.  *Fincher III* makes clear that defendant can be held liable for failure to pay benefits after the Court's reformation order.  Although in *Fincher III* the defendant was found to have acted reasonably as a matter of law, the court looked to the date of the district court's reformation order to determine when the obligation to pay plaintiff APIP benefits arose.  *See* 374 F. App'x at 845.  Thus, defendant's argument that the Court's reformation order is merely interlocutory and does not create an obligation binding on defendant fails.

viability of bad faith claims in these cases depends on the effective date of reformation. *Clark I* explained that such claims can remain viable if the district court sets the date of reformation as preceding its order of reformation, as the Court did here. *See* 319 F.3d at 1244. Setting a reformation date prior to the reformation order can create an "an extant contract, tort, or statutory duty" to pay APIP benefits, which defendant breached. *Id.* Here, unlike in *Fincher*, defendant's behavior was not based on a reasonable reading of the existent law. Defendant should have known it had to comply with *Brennan* when it renewed the Policy, but it did not. Defendant's duties to Kirk Warren began running on March 13, 2002, and the Court rejects defendant's argument that it owed no duties to Kirk Warren until the Court ordered reformation. Therefore, defendant may be held liable for bad faith allegedly pre-dating the Court's reformation order.

### B.  Declaratory Relief/Equitable Reformation

Defendant concedes that plaintiff's claim for equitable reformation survives Kirk Warren's death. *See* Docket No. 196 at 29-30. *See* Fed. R. Civ. P. 25(a). Defendant also does not seek summary judgment as to this claim. Therefore, this claim survives.

### C.  Breach of Insurance Contract

In the complaint, plaintiff claims that defendant breached the reformed contract and seeks damages for this breach, including the difference between the amount of APIP-compensable losses and the amount of benefits actually paid by defendant. Defendant does not seek summary judgment on this claim, but argues that this claim cannot survive because it never accrued, or if it does survive, the estate is limited in the

damages it can recover on this claim.

Defendant's argument that it cannot have breached any contract between it and Kirk Warren prior to the court's reformation order fails as discussed above in section III.A.[3]  In its response to the motion for substitution, defendant argues that plaintiff is also limited in the damages plaintiff can recover for breach of contract, not because of the Colorado survival statute, but because CAARA itself and the terms of the policy do not allow for the recovery of certain expenses and because plaintiff assigned its claim for certain damages to the Department of Veterans Affairs.  *See* Docket No. 196 at 22-26.  These arguments were not raised in defendant's summary judgment motion and they do not relate to whether plaintiff's breach of contract claim can continue despite Kirk Warren's death.  Defendant is essentially asking the Court to grant it partial summary judgment as to these issues without having so moved.  The deadline for filing a dispositive motion in this case has passed.  *See* Docket No. 147 (dispositive motions due July 16, 2010).[4]

Defendant also argues that plaintiff cannot recover prejudgment interest and attorneys' fees under Colo. Rev. Stat. §§ 10-4-708(1.7) and (1.8).  Defendant's argument that these damages cannot be recovered because no benefits are due under

---

[3] The Court notes that, in *Fincher II*, the district court granted summary judgment *sua sponte* in plaintiff's favor on her breach of contract claim, despite dismissing her bad faith claims, reasoning that after the reformation order there was no dispute that defendant had breached the reformed policy.  2007 WL 2936312 at *5-*6.

[4] Accordingly, the Court will deny plaintiff's motion [Docket No. 153] for leave to supplement its response to defendant's motion for partial summary judgment as this motion seeks to introduce evidence of plaintiff's agreement with the Department of Veterans Affairs, evidence that is only relevant to these issues.

the policy is defeated by the analysis in section III.A finding that benefits were due Kirk

Warren as of March 13, 2002.  Defendant's argument that these damages are statutory

penalties not recoverable under the survival statute will be addressed below in the

discussion of plaintiff's claim for willful and wanton statutory bad faith.  Defendant's

other arguments claiming plaintiff cannot recover prejudgment interest and attorney's

fees under CAARA were not made in its summary judgment motion and do not relate to

survivability; therefore, they are inappropriate for consideration here and should be

included in a future summary judgment motion from defendant as discussed above.

### D.  Willful and Wanton Statutory Bad Faith

#### 1.  Survivability

Defendant argues plaintiff cannot recover on its claim for willful and wanton

statutory bad faith pursuant to Colo. Rev. Stat. § 10-4-708(1.8) for several reasons.  For

the reasons discussed in section III.A, the Court rejects defendant's argument that no

cause of action for statutory bad faith accrued before Kirk Warren's death because no

benefits were due under the Policy until the reformation order was entered.

Defendant argues that CAARA's treble damages provision is a "penalties" clause

that does not survive Kirk Warren's death under the Colorado Survival Statute.  Before

its repeal, CAARA's § 10-4-708 provided for the prompt payment of direct insurance

benefits and § 10-4-708(1.8) allowed for the recovery of treble damages where a

plaintiff could show a "willful and wanton failure of the insurer to pay such benefits when

due."  Colo. Rev. Stat. § 10-4-708 (2002).  The Colorado survival statute allows for the

survival of all claims, save libel and slander, and states that such claims "may be

brought or continued notwithstanding the death of the person in favor of or against

17

whom such action has accrued." Colo. Rev. Stat. § 13-20-101(1). The statute goes on

to provide a limitation on this broad statement by providing that "punitive damages shall

not be awarded nor penalties adjudged after the death of the person against whom

such punitive damages or penalties are claimed." *Id.* Plaintiff argues that, under this

plain language, all of Kirk Warren's claims for statutory penalties and punitive damages

survive his death.

    This interpretation of the statute, however, has been foreclosed by the Colorado

Supreme Court in *Kruse v. McKenna*, 178 P.3d 1198, 1200 (Colo. 2008). Although

*Kruse* addressed the assignability of statutory penalties under the Telephone

Consumer Protection Act, it interpreted the survival statute in order to determine

assignability pursuant to long-standing Colorado precedent that "assignability and

descendibility go hand in hand." *Id.* (quoting *Micheletti v. Moidel*, 94 Colo. 587, 591

(1934)). While the language of the statute appears to bar recovery of punitive damages

or penalties only "after the death of the person *against whom* such punitive damages or

penalties are claimed," Colo. Rev. Stat. § 13-20-101(1) (emphasis added), *Kruse* found

that, if a *plaintiff's* claims were "penalties," they would not survive. *See id.* This reading

of the survival statute was recently reaffirmed in *People v. Adams*, 243 P.3d 256, 261-

62 (Colo. 2010). Therefore, as the Court is bound by the state's highest Court's

reading of its own statute, s*ee Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th

Cir. 2003), plaintiff's claims for statutory penalties do not survive.[5]

---

    [5] Plaintiff submitted supplemental authority related to the assignability of
Telephone Consumer Protection Act claims in order to provide a context for *Kruse*.
*See* Docket No. 216. These cases and briefs, however, do not change the clear
interpretation of the survival statute in *Kruse* and, therefore, are not relevant to the

The Court must now decide whether plaintiff's claims under § 10-4-708 are statutory penalties. To determine "whether a statutory claim is one for a penalty," the Colorado Supreme court looks to "whether (1) the statute asserted a new and distinct cause of action; (2) the claim would allow recovery without proof of actual damages; and (3) the claim would allow an award in excess of actual damages." *Kruse*, 178 P.3d at 1201. As to the first prong, plaintiff's § 10-4-708 claim was listed as a separate cause of action in his complaint, *see* Docket No. 1 at 10, and Colorado cases generally treat this claim as its own cause of action. *See, e.g.*, *McClendon v. Regional Transp. Dist.*, 878 P.2d 123, 124 (Colo. App. 1994) (characterizing § 10-4-708 as providing "a cause of action to insureds"). As to the second prong, plaintiff need not prove actual damages under the statute given that a finding that the failure to pay was "willful and wanton" results in "an automatic statutory penalty of three times the amount of unpaid benefits." *Williams v. Farmers Ins. Group, Inc.*, 781 P.2d 156, 160 (Colo. App. 1989). Finally, the treble damages provision clearly allows an "award in excess of actual damages." *See Giampapa v. Amer. Family Mut. Ins. Co.*, 64 P.3d 230, 238 (Colo. 2003) ("the treble damages provision functions primarily as a statutory penalty or an enforcement mechanism, not as a complete remedial measure"). Therefore, plaintiff's claim for willful and wanton statutory bad faith is a statutory penalty under Colorado law and does not survive Kirk Warren's death. Similarly, plaintiff's claims for prejudgment interest and attorney's fees pursuant to section 10-4-708(1.7) and (1.8) are also statutory penalties under the *Kruse* test. CAARA created a new and distinct cause of

---

Court's analysis.

19

action, recovery of prejudgment interest and attorneys' fees under CAARA does not require proof of damages, and these awards would also recover in excess of actual damages.  *See Kruse*, 178 P.3d at 1201.[6]

### 2. Summary Judgment

Because the Court finds that plaintiff's claim for willful and wanton statutory bad faith does not survive Kirk Warren's death, it unnecessary to determine whether summary judgment is also appropriate on this claim.  Moreover, the Court need not address the arguments related to survivability that defendant raises for the first time in its response to plaintiff's motion for substitution.  *See* Docket No. 196 at 8-12 (arguing that penalties for willful and wanton statutory bad faith do not apply to unpaid APIP benefits); 12-13 (arguing no benefits are unpaid); 16-17 (arguing that penalties can only be recovered by the insured).

### E. Common Law Bad Faith Claims

Plaintiff asserts two common law bad faith claims: the fourth cause of action for breach of the implied covenant of good faith and fair dealing; and the fifth cause of action for common law bad faith.  "A bad faith insurance claim in Colorado 'is the affirmative act of the insurer in unreasonably refusing to pay a claim and failing to act in good faith . . . that forms the basis for liability in tort."  *Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 817 (Colo. App. 2006).

### 1. Survivability

---

[6]  Because the Court finds that attorney's fees under CAARA are a statutory penalty and thus barred by the survival statute, it need not address defendant's argument on summary judgment that plaintiff failed to submit the requisite notice that it was seeking such fees.  *See* Docket No. 148 at 19.

Defendant first argues that it cannot be held liable for bad faith failure to pay

benefits because Kirk Warren had no right to benefits until the Court ordered

reformation.  This argument fails, as discussed in section III.A.  Alternatively, defendant

argues that, even if the bad faith claims survive Kirk Warren's death, his estate is

limited in the damages it may recover on these claims.  *See* Docket No. 196 at 19-22.

Colorado's survivability statute provides that

> [I]n tort actions based upon personal injury, the damages recoverable
> after the death of the person in whose favor such action has accrued shall
> be limited to loss of earnings and expenses sustained or incurred prior to
> death and shall not include damages for pain, suffering, or disfigurement,
> nor prospective profits or earnings after date of death.

Colo. Rev. Stat. § 13-20-101(1).  Defendant argues that plaintiff's bad faith claims are

"tort actions based upon personal injury" and, therefore, plaintiff may only recover loss

of earnings and expenses sustained prior to Kirk Warren's death.  Plaintiff contends

that these claims are not based on personal injury, but injury to property, and thus not

limited by the statute.

No Colorado case directly addresses whether the estate of a deceased plaintiff

can recover non-economic damages under a claim for bad faith breach of contract.

Nonetheless, Colorado case law leads the Court to the conclusion that these claims are

"tort actions based on personal injury."  First, plaintiff's bad faith claims sound in tort.

*See Farmers Group, Inc. v. Trimble*, 658 P.2d 1370, 1375 (Colo. App. 1983)

(discussing the tort of bad faith breach of insurance contract and explaining that "[a]n

insured injured by [the bad faith] intentional conduct of an insurer is entitled to recover

damages based upon traditional tort principles of compensation for resultant injuries

actually suffered, including emotional distress, rather than upon concepts derived from

21

contract law.").  However, given that the survivability statute only limits the recovery of

damages "in tort actions *based upon personal injury*," Colo. Rev. Stat. § 13-20-101(1)

(emphasis added), if plaintiff is suing to vindicate an injury to property and not an injury

to Kirk Warren personally, then the claim may still be pursued by his estate.

 Plaintiff cites *Baker v. Young*, 798 P.2d 889 (Colo. 1990), for the general

proposition that an insured's rights under an insurance contract are property rights.

*Baker* only held, however, that an insured has a contractual right to be indemnified and

defended by the insurer under an insurance contract.  *See id.* at 894.  Plaintiff's bad

faith claims do not allege that defendant breached an explicit duty of the contract, but

rather that defendant breached the duty of good faith and fair dealing that is inherent in

every insurance contract, *see Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141

(Colo. 1984), and generally handled Kirk Warren's claim in bad faith.  In *Bernhard v.

Farmers Ins. Exchange*, the Colorado Supreme Court held that the insured's obligation

to act in good faith is not a benefit of the insurance contract itself.  915 P.2d 1285, 1290

(Colo. 1996) ("*Trimble II* creates a tort cause of action based on a bad faith breach of

an insurance contract, but it does not give rise to a claim that failure to deal in good

faith is a denial of a contract benefit.").  Therefore, breach of this covenant cannot be a

claim seeking to vindicate the denial of a property right provided in the insurance

contract.

 The Court finds that bad faith breach of contract claims are based on personal

injury.  Therefore, plaintiff will be limited to recovering loss of earnings and expenses

incurred prior to Kirk Warren's death and will be unable to recover damages for pain

and suffering or future wages.  *See* Colo. Rev. Stat. § 13-20-101(1).

### 2. *Summary Judgment*

In its summary judgment motion, defendant argues that plaintiff's bad faith claims should be dismissed because it is undisputed that defendant reasonably relied on its understanding of the uncertain state of the law at the time defendant issued and renewed the Policy.  *See* Docket No. 148 at 16-17.  As the Court explained in section III.A, the state of the law was no longer uncertain at the time defendant renewed the Policy on March 13, 2002.  Therefore, a jury question remains as to whether defendant engaged in bad faith by offering a renewal of a policy that did not comply with CAARA, refusing to reform the Policy, and refusing to pay Kirk Warren benefits under the reformed policy.

In its summary judgment motion, defendant also argues that plaintiff cannot rely on defendant's post-litigation conduct as evidence of bad faith because such evidence is inadmissible as unduly prejudicial and irrelevant.  In *Parsons,* the Colorado Court of Appeals explained that litigation conduct after an insurance claim is denied or payment delayed may be of limited relevance because "the focus of the [bad faith] claim is on the decision to refuse to make or delay making payments owed under an insurance policy."  165 P.3d at 817.  However, *Parsons* also explained that evidence of an attorney's post-filing litigation conduct could be relevant in some circumstances and could be admitted "if the risks of unfair prejudice, confusion of the issues, or misleading the jury, and the considerations of undue delay, waste of time, or the presentation of unnecessary cumulative evidence are substantially outweighed by the probative value

of the evidence." *Id.* at 818.  Here, it is not yet clear precisely what post-litigation conduct plaintiff will seek to introduce at trial as evidence of defendant's bad faith. Because plaintiff's bad faith claim would survive summary judgment based on defendant's pre-litigation conduct alone, the Court need not resolve what sorts of post-litigation conduct are properly relevant and will leave this issue for resolution closer to trial.

### F.  Exemplary Damages

Plaintiff's complaint seeks "an award of exemplary damages based on the evidence of Defendant's wrongful conduct."  Docket No. 1 at 14.  Defendant argues both that plaintiff's claim for punitive damages does not descend to Kirk Warren's estate under the survival statute and that summary judgment is appropriate as to this claim.  The Colorado survival statute treats statutory penalties and punitive damages as the same.  *See* Colo. Rev. Stat. § 13-20-101(1) ("punitive damages shall not be awarded nor penalties adjudged after the death of the person against whom such punitive damages or penalties are claimed").  Thus, under the Colorado Supreme Court's reading of this statute in *Kruse*, plaintiff can no longer seek exemplary damages on any of its claims after Kirk Warren's death, and the Court need not discuss whether summary judgment is appropriate on this claim.  *See* 178 P.3d at 1200.

## IV.  CONCLUSION

For the foregoing reasons, it is

 **ORDERED** that plaintiff's Motion for Substitution [Docket No. 183] is **GRANTED** in part and **DENIED** in part.  Plaintiff's first claim for declaratory relief/equitable

reformation is not extinguished.  Plaintiff's second claim for breach of insurance

contract is not extinguished.  Plaintiff's third Colo. Rev. Stat. § 10-4-708 claim for willful

and wanton statutory bad faith, attorneys' fees and prejudgment interest is

extinguished.  Plaintiff's fourth claim for breach of the implied covenant of good faith

and fair dealing and plaintiff's fifth claim for common law bad faith survive with limited

damages.  It is further

      **ORDERED** that the Motion to Strike Plaintiff's Motion in Limine, Submittal of Jury

Instructions, Witness and Exhibit Lists and Voir Dire Questions, and for Stay Pending

Substitution of Proper Party Pursuant to Fed. R. Civ. P. 25(a) [Docket No. 180] is

**DENIED** as moot, as Karen Warren, as the personal representative of the estate of Kirk

Warren, is now substituted as the plaintiff in this action.  It is further

      **ORDERED** that defendant's Motion for Partial Summary Judgment [Docket No.

148] is **DENIED** in part and **DENIED** as moot in part.  It is further

      **ORDERED** that plaintiff's Motion for Leave to Supplement Plaintiff's Response to

Defendant's Motion for Partial Summary Judgment [Docket No. 153] is **DENIED**.  It is

further

      **ORDERED** that the Recommendation for Rescheduling of Trial Date [Docket No.

166] is moot in light of the resetting of the trial in this case to August 29, 2011.  It is

further

**ORDERED** that the Joint Motion to Extend Pretrial Deadlines [Docket No. 170] is

**DENIED** as moot in light of the resetting of the trial in this case to August 29, 2011.


DATED March 24, 2011.

BY THE COURT:


 s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge

26